## WESLEY WILSON

*v.*

## STATE OF ILLINOIS.

*Opinion filed April 17, 1923.*

UNIVERSITY OF ILLINOIS—*power to effect settlement to injured employee.* The University of Illinois, nor any other State institution, have no power to make agreements or settlements with its employees for personal injuries sustained by them while in the discharge of their duty.

RULE OF UNIVERSITY—*acquiesence therein by the State.* While the State is not liable for injuries sustained by its employees in the discharge of their duty, yet where the University has adopted a rule of its own which provides for compensation for such injuries, and an appropriation is made by the State to take care of such charge, it may be reasonably inferred that the State approved such rule and acquiesced therein.

Edward J. Brundage, Attorney General, for State.

This is a claim filed by Wesley Wilson for damages for injuries received by him while in the employ of defendant, while engaged as a carpenter at the State University at Urbana, Illinois.

The facts in the case are as follows:

The claimant, being about sixty years old and being employed as a carpenter by the University of Illinois at a salary of $140.00 per month, was severely injured January 20th, 1920, as a result of the body of an automobile truck, upon which he was working, falling upon or against him, crushing his chest. No bones were broken, but several articulations between the ribs and breast bone and spine were pulled loose, causing also a great nerve shock. And to the date the evidence in the case was taken, April 7th, 1921, the claimant had been unable to do any work.

The evidence is that on the date of the accident, January 20th, 1920, and for ten years prior thereto the claimant, who was a carpenter at the University of Illinois was receiving a salary of $140.00 per month. Claimant was by order of one of his superior officers sent to the power house to assist in the repair of an automobile truck located in a room of the power house, and used for a repair shop by the University. The body of the truck was set up or suspended endwise and while claimant was boring holes through the body for its necessary repair from some unknown cause the body fell toward and upon claimant, crushing him between the body and the other part of the truck, the body having been detached for the purpose of repair. Claimant was instantly rendered unconscious; but was soon rescued by other workmen present or nearby and taken to the hospital, where he remained for several days. Since he left the hospital he has been treated several times by several physicians.

Claimant testified that prior to the said injuries he was a strong, able-bodied man, free from chest troubles or shortness of breath or soreness of chest, of which he now complains; that in consequence of the said injuries he has not been able to do any manual labor on account of hurting or soreness in chest, shortness of breath, and weakness of arms, all of which he alleges are results of the said injuries.

Dr. Burres testified in part as follows:

I was called in fall of 1920 to treat claimant at his house for what he called shortness of breath and pain in chest. I found his breathing rather rapid and spasmodic or irregular and he complained of pain; found he had heart enlarged some and somewhat rapid. Found no physical evidence of injury; but there evidently has been. The breathing and circulation were not normal, which I attributed to some thoracis injury. I thought the injury could be the result of a crushed chest; or crushed walls of the chest. If the condition is due to the injury complained of, as I surmised, then it would probably be permanent. It would impair his ability to work. His condition may have been due to the injuries or it may have resulted from other causes. I did not examine him for six months after the alleged injury.

Dr. Gulick testified in part as follows:

First time I was called to see claimant was last summer, and found him breathing rapidly with a rapid heart and very nervous. Of course that was due to lack of deep respiration, and he was very nervous. He told me how he was hurt in the accident. I made no examination for the result of the injury. Last two times I treated his was for extreme nervousness, and a strong nerve medicine always relieved him, and it appeared to me that his condition was due to the general effect on his nervous system from this crushing injury—the shock. A man of his age being injured in the manner he was and to the extent he seemed to have been injured, does not come back, or recuperate from a nerve shock. The nerve power is not strong. He would not have the power of endurance. My opinion is that his condition is due to nerve shock. Crushing injuries to the chest always bring on nerve shock. I do not know how severe his injury was as I did not examine him then, (meaning at time of injury).

Dr. Beard is the health officer of the University, who having an emergency case at the time asked that another doctor be called. Afterwards he met Drs. Gray and Yantis, all of whom took part in binding up patient's chest and he was taken to hospital. We afterwards had an "X-Ray" taken of Mr. Wilson's chest and could see that certain articulations had been pulled loose both from spine and ribs. With a man of his age convalescence would be very slow and prolonged. It would take considerable time for recovery in such case for a man of his age.

Dr. Yantis had attended claimant at times before this accident and found his respiration all right, and attended him soon after accident and several times since. It is his opinion that the injuries received by the accident are permanent. On being asked about his ability to perform manual labor since the injuries, Dr. Yantis said, "It would lower his nervous resistance; I think the man would not be safe on

high buildings on account of faintaing spells he would take at times, and the muscular action, in lifting and straining, taking into account his age, too, I think it would greatly hamper him in that particular. He is in a state of neurasthenia."

From the weight of the evidence it seems reasonably clear claimant is a neurasthenic; that he has considerable trouble in his chest and possibly some enlargement of the heart; and that these conditions were and are the result of said injuries, as claimant's evidence and the evidence of Dr. Yantis show that prior to the accident none of these conditions existed. But this evidence was all taken April 7th, 1921— being nearly two years since it was taken, and about 15 months after the accident happened.

It appears that the University had adopted a rule or law of its own, which provided that any one injured while in the employ of the University of Illinois should be compensated if the case was meritorious, etc. Some time after this accident the trustees appointed Judge Harker, C. M. McCown, and Lloyd Morey, a committee to investigate and to determine what would be a fair and equitable settlement of this case. Their report to be reported to the Board of Trustees and the President of the University for approval.

This was done; the committee heard evidence with respect to the injuries. The defendant participated therein, testifying in his own behalf as to the extent of the injuries; medical testimony was taken, and the said committee reported recommending a certain settlement, acceptable to the University, and was agreed to and signed by the claimant.

Also the following stipulation by counsel has been submitted in evidence, to-wit:

"Abstract of stipulation with respect to settlement between claimant and University of Illinois."

"It is hereby stipulated by and between the parties hereto by their respective counsel that the paper attached hereto, entitled "proposed settlement with Wesley Wilson for accident January 28th, 1920" is a true copy of the settlement recommended by the committee of the University of Illinois for injured employees in respect to the injuries of the claimant herein; that said settlement was signed by the claimant herein as indicated in said paper; and that the same was approved by the Board of Trustees of the University of Illinois; that the claimant has been receiving payments from the University of Illinois to the present date as provided in said settlement; and that the said University has fully discharged all its obligations under paragraphs 1 and 3 of said settlement, and has paid each payment due to this date under said second paragraph of said settlement."

(Signed)    F. T. Carson, Attorney for Claimant.

(Signed)    Edward J. Brundage, Attorney General."

"Proposed settlement with Wesley Wilson for accident January 28th, 1920.

1. Allowance of $12.00 per week from date of accident to July 15, 1920, period of disability as per report of examining physicians,

24 weeks at $12.00 per week, $288.00.    ($140.00 of this amount has already been paid).

2.   Allowance of $24.00 per month from July 15, 1920, until death; but not for more than five years, payable monthly on first of each month.   (These payments to cease in case Mr. Wilson resumes full time employment at full carpenter's wages).   Maximum total, $1,440.00.

3.   Payment of bills for hospital and medical attention on account of said injuries incurred prior to July 15, 1920, estimated $100.00. Estimated maximum total, $1,828.00.

This proposed settlement is acceptible to me.   I understand that its status at present is merely that of a recommendation agreed upon by the Commission which must be recommended also by the President of the University and approved by the Board of Trustees in order to become effective.

                                   (Signed)    Wesley Wilson.
   Approved by Board of Trustees."

The declaration in this case appears to have been filed March 18, 1921; but claimant had up to October 15, 1922, continued to draw the monthly allowance from the University according to the terms of the said agreement between him and the University, and at said date he had received under said agreement the sum of $1,036.00, $100.00 of which is for medical services and hospital expenses.   Should claimant live out the full period of five years without resuming work on full pay as provided under said agreement and continue to draw monthly the sum so stipulated and agreed to in said settlement for said period, then he will have drawn the total maximum sum of $1,828.00.   He may resume his duties as carpenter in said institution at any time on full pay.

From the fact that the University has paid and continues to pay to claimant the consideration as per the terms of the said settlement, it may reasonably be inferred that the State has acquiesced therein by its appropriations to take care of this charge.

We are not aware of any law authorizing or empowering the University of Illinois, or any of the State institutions to make contracts, agreements, or settlements with any of its employees for damages for personal injuries received by them while in the employ of such institution.   But we do not criticize the University for said rule for settlement with its employees.   It is probable that the University is in a better position under that rule to give quick, equitable and ample relief to those of its employees who happen to misfortune while in line of duty, than any legal tribunal would be.   The rule was no doubt made to aid the University in a more economic management of the institution.   In this case at bar a committee of excellent men was named by the Board of Trustees, which heard the evidence of claimant and the physicians and all witnesses to the facts, and upon such hearing made its recommendation as aforesaid, which was approved by the Board of Trustees and agreed to and signed by claimant.   The claimant might have presented his claim then to the Court of Claims for its consideration; but he chose to settle with the University.   No doubt the settlement made at

that time from the evidence before the committee was a fair, honest and equitable settlement, with which claimant was entirely satisfied.

We assume that the University will continue to discharge its obligations as provided in said settlement, should the State continue to allow its appropriations for that purpose as in the past it has done.

This Court, however, has repeatedly held that the State of Illinois is not liable for injuries sustained by its employees while in the employment of the State; and the Court has so held in all cases of this character both before and after the passage of the act of 1917, creating the Court of Claims, and defining its jurisdiction.

In response to a communication by the Clerk of this Court inquiring of the University if the claimant is still drawing his pay as per his and the University's agreement. We received an affirmative reply. Claimant having chosen to settle with the University in the manner he did; and it appearing to the Court that he is getting and will get under said agreement all he is entitled to as shown by the evidence.

We sustain demurrer and dismiss the case.